# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSANNE STATE,<br><br>                                    Petitioner,<br><br>v.<br><br>ADOLOPHO GONZALES, Chief<br>Probation Officer<br><br>                                    Respondent. | Case No.: 18cv1385 BTM (BGS)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS AND GRANTING A CERTIFICATE OF APPEALABILITY** |

Petitioner Rosanne State is proceeding with a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner alleges her Sixth Amendment rights were violated when her trial counsel rendered ineffective assistance of counsel by failing to adequately investigate key facts and present available defenses that would likely have resulted in her acquittal. (ECF No. 1-2 at 5–6.)

Respondent Adolpho Gonzales, Chief Probation Officer, County of San Diego, California ("Respondent") filed a Motion to Dismiss the Petition on the grounds that (1) the Petition was filed after the expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) and (2) the sole claim presented is procedurally defaulted. (ECF

No. 3 at 10–18.)[1]  Petitioner, who has been represented by counsel while seeking post-conviction relief, filed a five-page opposition arguing that the Petition was timely, and alternatively, the she is entitled to both statutory and equitable tolling of the limitations period and should be permitted to proceed on the merits of her Petition pursuant to the actual innocence exception.  (ECF No. 5 at 4–9.)  No reply was filed.  For the reasons discussed below, Respondent's Motion to Dismiss (ECF No. 3) is **GRANTED**.

## I.     BACKGROUND

On August 7, 2015 Petitioner was convicted by a jury of two misdemeanors in San Diego County Superior Court case number M188608: one count of driving under the influence of a drug pursuant to California Vehicle Code § 23152(e) (effective from Jan. 1, 2014 to Dec. 31, 2016) and one count of driving without a valid driver's license pursuant to California Vehicle Code § 12500(a).  (Lodgment 1 at 25–26.)  The imposition of sentence was suspended for five years and the court granted Petitioner probation.  (*Id.*; Lodgment 2 at 1; Lodgment 7 at 2.)  Petitioner was represented by counsel at trial and during all phases of her post-conviction filings.  (*See* Lodgments 1, 3, 5, 6, 8, 10.)

On November 19, 2015, Petitioner filed her first petition for writ of habeas corpus with the San Diego Superior Court, seeking leave to file a late notice of appeal based on her trial attorney's ineffective assistance of counsel in failing to communicate Petitioner's appeal rights and timely file a notice of appeal.  (Lodgment 1.)  The petition was denied on December 9, 2015, with the court finding a petition for writ of habeas corpus was not the proper vehicle for Petitioner's request to allow her to file a belated notice of appeal, as her challenge was "not to the basis for or conditions of her probation that resulted from her conviction in her criminal case."  (Lodgment 2 at 2.)

Next, on January 26, 2016 Petitioner filed a motion for permission to file a late notice

---

[1] The Court cites the CM/ECF pagination when referencing the Petition and attached exhibits (ECF No. 1), Respondent's Motion to Dismiss (ECF No. 3), Petitioner's Opposition (ECF No. 5) and all Lodgments (ECF No. 4).

of appeal, or a motion for constructive filing of a notice of appeal, with the California Court of Appeal. (Lodgment 3.) The motion was denied on February 11, 2016 as it did "not establish circumstances in which such relief [was] authorized", with the court citing *In re Benoit*, 10 Cal. 3d 72, 86–89 (1973) and *In re Chavez*, 30 Cal. 4th 643, 657–58 (2003). (Lodgment 4.) A petition for review filed on February 19, 2016 with the California Supreme Court was denied on March 23, 2016. (Lodgment 5.)

On September 15, 2016, Petitioner filed a second habeas petition with the San Diego County Superior Court. (Lodgment 6.) This petition attacked the underlying judgment in Petitioner's misdemeanor conviction by presenting a claim of ineffective assistance of trial counsel. (*Id.* at 5–28.) The court denied the petition on December 21, 2016 finding it both failed to state a prima facie case and that the claims lacked merit. (Lodgment 7.) Petitioner then filed a habeas petition with the California Court of Appeal January 13, 2017, presenting the same claim of ineffective assistance of trial counsel. (Lodgment 8.) In its January 24, 2017 order denying the petition, the court of appeal found that the superior court petition was untimely, citing *In re Reno*, 55 Cal. 4th 428, 490–93 (2012) and *In re Swain*, 34 Cal. 2d 300, 302 (1949). (Lodgment 9 at 2.) Additionally, the court found the petition failed to state a prima facie case for relief, citing *People v. Duvall*, 9 Cal. 4th 464, 474 (1995). (*Id.*) Finally, the court denied the petition on its merits. (*Id.* at 2–4.) On March 20, 2017, Petitioner filed a habeas petition raising the same ineffective assistance of counsel claim with the California Supreme Court. (Lodgment 10.) On November 29, 2017, the California Supreme Court issued a summary denial. (Lodgment 11.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 22, 2018, nearly seven months after the California Supreme Court's denial of her state habeas petition. (ECF No. 1.)

## II. DISCUSSION

### A. The Petition Is Barred by the AEDPA Statute of Limitations

Respondent argues the Petition is barred by AEDPA's one-year statute of limitations as no statutory tolling occurred before the limitations period expired and there is no basis

for equitable tolling. (ECF No. 3 at 11–15.) Petitioner argues that she should be entitled to statutory tolling pursuant to her state court filings as well as equitable tolling based on her trial counsel taking "*advantage of [her] medical condition* to her detriment." (ECF No. 5 at 5–8 [emphasis in original].) Finally, she asserts her actual innocence. (*Id.* at 8–9.) For the reasons discussed below, statutory tolling does not render the Petition timely, Petitioner is not entitled to equitable tolling, and she does not fall within the narrow actual innocence exception.

**1. AEDPA's One Year Statute of Limitations and Commencement of the Limitations Period**

The instant Petition was filed after April 24, 1996 and is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA provides a one-year statute of limitations for filing a habeas corpus petition in federal court. *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (citing 28 U.S.C. § 2244(d)(1)). This one-year statute of limitations period begins to run at the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Here, subparagraphs (B) through (D) are not applicable to Petitioner. She has provided no argument or evidence that there were state impediments preventing her from

seeking further relief, that her claim relies on a new constitutional right, or that the factual predicate for her claim was unknown at the time her conviction became final.

Thus, under AEDPA, Petitioner had one year from the date her conviction became final to file a petition for writ of habeas corpus in federal court. *Calderon v. U.S. District Court*, 128 F.3d 1283, 1286–87 (9th Cir. 1997), *as amended on denial of reh'g and reh'g en banc, cert. denied*, 522 U.S. 1099 (1998), *overruled on other grounds by Calderon v. U.S. District Court*, 163 F.3d 530 (9th Cir. 1998), *cert. denied* 523 U.S. 1063 (1999).

Under California law, a defendant can appeal "a final judgment of conviction" in a misdemeanor case to the appellate division of the superior court. Cal. Penal Code § 1466(b)(1). An order granting probation is considered a final judgment. *Id.* Further, a "notice of appeal must be filed within 30 days after the rendition of the judgment . . . ." Cal. R. Ct. 8.853(a).

Here, Petitioner did not timely appeal her conviction. Thus, her conviction became final when the time period for seeking review expired. In this case, the time to appeal her misdemeanor conviction expired 30 days after rendition of the judgment. *See* Cal. R. Ct. 8.853(a). As judgment was rendered on August 7, 2015, Petitioner's conviction became final on September 8, 2015.[2] Under 28 U.S.C. § 2244(d)(1), Petitioner's deadline to file a federal habeas petition was September 8, 2016. *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) (explaining that the one-year statute of limitations under AEDPA begins to run the day after a conviction becomes final). The instant federal Petition was not filed until June 22, 2018. (*See* ECF No. 1.) Thus, absent statutory or equitable tolling, the Petition is untimely on its face and must be dismissed. *See Calderon*, 128 F.3d at 1288 (AEDPA's statute of limitations may be subject to both statutory and equitable tolling).

### 2. Statutory Tolling

---

[2] Because thirty days from August 7, 2015 fell on a Sunday, Petitioner's deadline to timely appeal her conviction extended to the following non-holiday, Tuesday, September 8, 2015. *See* Cal. R. Ct. 1.10(a)–(b). Monday, September 7, 2015 was Labor Day, a court holiday.

AEDPA's statutory tolling provision suspends the one-year statute of limitations period for the amount of time a "properly filed application for State post-conviction or other collateral review" is pending in state court. 28 U.S.C. § 2244(d)(2); *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002). A petitioner "bears the burden of proving that the statute of limitations was tolled." *Banjo v. Ayers*, 614 F.3d 964, 967 (9th Cir. 2010). The statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case "pending" during that interval. *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010); *Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007); *Nino*, 183 F.3d at 1006.

An application for state post-conviction review is considered "pending" during the interval between the lower state court's adverse decision and the petitioner's filing of a notice of appeal in the higher state court, provided that the filing of that notice is timely under state law. *Carey*, 536 U.S. at 222–25; *see Chaffer v. Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010) (per curiam) (Under California's indeterminate timeliness rule, "[a]s long as the [petitioner] filed a petition for appellate review within a 'reasonable time,' he c[an] count as 'pending' (and add to the 1-year time limit) the days between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a petition in the higher state court.")

In California, where habeas decisions are not appealed but may be filed originally in each court, "pending" includes a reasonable time, such as thirty to sixty days, between a decision and a subsequent filing. *Evans v. Chavis*, 546 U.S. 189, 201 (2006) (holding that an unjustified and unexplained six-month delay is presumptively unreasonable); *see Robinson v. Lewis*, 795 F.3d 926, 930 (9th Cir. 2015) (citations omitted) ("We have held that delays of 115, 101, and 81 days make a petition untimely unless the petitioner can show good cause."); *Stewart v. Cate*, 757 F.3d 929, 935 & 935 n.8 (9th Cir. 2014) (absent guidance from the California courts themselves, the Supreme Court's sixty-day limit is the "benchmark" federal courts should apply for California's "reasonable time" requirement).

However, a petitioner who unreasonably delays in filing a state habeas petition is not entitled to statutory tolling because the petition is not considered "pending" or "properly filed" within the meaning of § 2244(d)(2). *Nedds v. Calderon*, 678 F.3d 777, 780 (9th Cir. 2012) (quoting *Carey*, 536 U.S. at 225.).

Additionally, statutory tolling is not available for the period a petition is under consideration if it is untimely, even if the state court also addresses the merits of the petition. *Pace*, 544 U.S. at 413–14. Similarly, the gap time between filings in California courts does not count as "pending" pursuant to 28 U.S.C. § 2244(d)(2) if the petition is ultimately found to be untimely. *Chavis*, 546 U.S. 189; *Carey*, 536 U.S. at 223–26. Absent a clear indication that a petition is untimely, a federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Chavis*, 546 U.S. at 198.

Further, a petitioner is not entitled to statutory tolling between the conclusion of one round of state collateral review and the start of a subsequent round of state collateral review. *Biggs v. Duncan*, 339 F.3d 1045, 1047–48 (9th Cir. 2003) ("Because the claims raised in the petition to the California Supreme Court were fully exhausted and his first round of collateral review was complete when the Court's ruling became final, he is not entitled to tolling of the 129-day period before he began a second round of petitions with his filing in Superior Court."). Additionally, the limitations period continues to run between the end of state court habeas review and the filing of the federal petition. *See Nino*, 183 F.3d at 1006 (AEDPA's limitations period tolled "until the California Supreme Court rejects the petitioner's final challenge"). Finally, state habeas petitions filed after the one-year statute of limitations has expired do not revive the statute of limitations and have no tolling effect. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).

In her opposition, Petitioner does not engage in any detailed analysis explaining why she is entitled to statutory tolling. Instead, in her discussion of statutory tolling she claims

she was "exceptionally diligent in seeking a review of the judgement by the state courts after trial counsel ruined her chance for a standard appeal." (ECF No. 5 at 5.) She argues that "the petitions filed in state court should all have tolled the AEDPA filing deadline" as she "was not someone who let time pass before challenging her conviction." (*Id.* at 6.) However, such argument ignores both the realities of Petitioner's filing history and established legal precedent regarding AEDPA's statutory tolling provisions.

Petitioner's misdemeanor conviction became final on September 8, 2015 and her one-year deadline to file her federal habeas petition under AEDPA commenced on September 9, 2015. Thus, she had until September 8, 2016 to file a federal habeas petition. On November 19, 2015, Petitioner filed a petition for writ of habeas corpus with the San Diego Superior Court, seeking leave to file a late notice of appeal. (Lodgment 1.) Even assuming arguendo that such a petition was a "properly filed application for State post-conviction or other collateral review" under 28 U.S.C. § 2244(d)(2),[3] seventy-one (71) days of the three hundred and sixty-five (365) day AEDPA limitations period elapsed from September 9, 2015 to November 19, 2015 when there was no case "pending." *See Porter*, 620 F.3d at 958; *Nino*, 183 F.3d at 1006; *Thorson*, 479 F.3d at 646. This left Petitioner with two hundred and ninety-four (294) days of the AEDPA limitations period remaining.

Again, assuming arguendo that Petitioner's subsequent motions filed with the California Court of Appeal and California Supreme Court from November 19, 2015 to March 23, 2016 were "properly filed application[s] for State post-conviction or other collateral review", she would be entitled to both gap tolling between the motions and tolling for the period when the motions were pending. *See Carey*, 536 U.S. at 222–25; *Chavis*,

---

[3] Arguably, Petitioner is not entitled to any statutory tolling for this time-period. Respondent argues that Petitioner's September 15, 2016 habeas petition was her first application for collateral review of her conviction, and by then the AEDPA limitation period was expired and no statutory tolling could apply (ECF No. 3 at 12–13 [citing *Ferguson*, 32 F.3d at 823].) However, because crediting Petitioner with this time does not impact the Petition's timeliness, the Court includes it in its analysis for the sake of refuting Petitioner's argument.

546 U.S. at 201; *Chaffer*, 592 F.3d at 1048. However, from March 23, 2016, the date the California Supreme Court denied Petitioner's petition for review, to September 15, 2016, the date Petitioner filed a second habeas petition with the San Diego County Superior Court, Petitioner would not be entitled to statutory tolling. *See Biggs*, 339 F.3d at 1047–48. Thus, an additional one hundred and seventy-six (176) days of the three hundred and sixty-five (365) day AEDPA limitations period elapsed. This left Petitioner with one hundred and eighteen (118) days of the AEDPA limitations period remaining.

Petitioner's second superior court habeas petition was denied on December 21, 2016 and she subsequently filed a habeas petition with the California Court of Appeal on January 13, 2017. The petition was denied on January 24, 2017. Because the California Court of Appeal denied the habeas petition as untimely, as well as on the merits, Petitioner is not entitled to statutory tolling for the period the petition was "pending" or for the gap period after the superior court's denial and the filing of the appellate court petition. *See Carey*, 536 U.S. at 223–26 (time between the denial of a petition in a lower California court and the filing of a subsequent petition in the next higher state court does not toll the statute of limitations if the petition is untimely); *Pace*, 544 U.S. at 413–14 (statutory tolling not available for the period of time a petition is under consideration if it is untimely, even if the state court also addresses the merits); *Valdez v. Montgomery*, No. 16-56845, ___ F.3d ___, 2019 WL 1179304, at *4 (9th Cir. Mar. 14, 2019) (citing *Robinson*, 795 F.3d at 929 ("If a California court has held that a state habeas petition was timely or untimely, we are bound by that decision.").

The same is true with respect to the California Supreme Court habeas petition, which was summarily denied on November 29, 2017. In *Evans v. Chavis*, the Supreme Court held that in absence of a clear indication by the state supreme court that a petition is untimely, the federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." 546 U.S. at 198. Here, the California Supreme Court denied the petition without comment or citation to authority. Lacking an indication from the state supreme court regarding timeliness, the Court must

examine the delay "and determine what the state courts would have held in respect to timeliness." *Chavis*, 546 U.S. at 198. Although the California Supreme Court did not address Petitioner's over one-year delay, the appellate court found the delay unjustified. (Lodgment 9 at 2 [citing *In re Reno*, 55 Cal. 4th 428, 459 (2012) and *In re Swain*, 34 Cal. 2d 300, 302 (1949)].) Because Petitioner provided no basis for a finding of good cause or any other excuse justifying the delay, the delay was "unreasonable" within the meaning of California law, and the California Supreme Court habeas petition was neither "properly filed" nor "pending" within the meaning of 28 U.S.C. § 2244(d)(2). *See Robinson*, 795 F.3d at 929 ("California courts allow a longer delay if the petitioner demonstrates good cause"); *Chavis*, 546 U.S. at 199–200; *Pace*, 544 U.S. at 413–14 (denial of a petition by California Supreme Court for untimeliness precludes statutory tolling). Even assuming Petitioner's second superior court habeas petition is entitled to statutory tolling, Petitioner is still not entitled to statutory tolling from December 21, 2016, the date of the superior court's denial of her second habeas petition, to November 29, 2017, the date of the California Supreme Court's summary denial of the petition. Thus, an additional three hundred and forty-three days (343) days elapsed, which is well in excess of Petitioner's remaining one hundred and eighteen (118) days of the AEDPA limitations period.

Finally, from November 29, 2017, the date of the California Supreme Court's summary denial of her petition, to June 22, 2018, the date of the filing of the instant federal Petition, Petitioner is not entitled to statutory tolling. *See Nino*, 183 F.3d at 1006. Thus, even if Petitioner still had any portion of the AEDPA limitations period remaining, an additional two hundred and five (205) days elapsed. Accordingly, even assuming arguendo that Petitioner was entitled to all potentially available statutory tolling, by the time she filed the instant habeas Petition on June 22, 2018, the AEDPA one-year limitations period was well-expired and the Petition was untimely. Accordingly, statutory tolling does not aid Petitioner, and unless Petitioner can establish she is entitled to equitable tolling, her Petition is untimely.

### 3. Equitable Tolling

In addition to statutory tolling, AEDPA's one-year statute of limitations may be subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, the threshold necessary to trigger equitable tolling is high and, thus, it is not available in most cases. *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010). Petitioner bears a heavy burden to prove an entitlement to equitable tolling, "lest the exceptions swallow the rule." *Id.* (internal quotation marks omitted).

To be entitled to equitable tolling, a habeas petitioner has the burden to establish two elements: (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (citing *Pace*, 544 U.S. at 418).

Here, Petitioner argues that she should be entitled to equitable tolling because "trial counsel *took advantage of petitioner's medical condition to her detriment*"[4] and this somehow "satisfies both prongs of *Holland*." (ECF No. 5 at 7 [emphasis in original].) In his motion, Respondent claims that "nothing beyond Petitioner's control prevented her from filing a timely federal petition" and because she "filed pleadings in the superior court, the state court of appeal, and the state supreme court . . . " during the year following her conviction, she logically "could have filed a timely federal habeas petition." (ECF No. 3 at 15.) Respondent argues this was a lack of diligence that precludes equitable tolling. (*Id.* [citing *Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007) ("A petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence.")].)

It is unclear how trial counsel taking "*advantage of petitioner's medical condition to her detriment*" as Petitioner claims would satisfy both prongs of *Holland*. First, Petitioner cites no authority in support of this position.

---

[4] Petitioner does not expand on this argument in her opposition. Presumably, Petitioner is attempting to link her hospitalization immediately following her conviction and her trial counsel's purported failure to inform her of the thirty-day deadline to file a notice of appeal.

Second, in light of the lengthy gaps between her "rounds" of collateral state court filings and the filing of the instant federal Petition, Petitioner's argument that her inability to file a timely federal petition stems from her trial counsel failing to inform her of the thirty-day deadline to appeal her misdemeanor conviction has a fundamental causation problem. While it could be true that trial counsel did not alert Petitioner specifically as to the thirty-day deadline to file a notice of appeal, (*see* Lodgment 1 at 30–31 [letter from trial counsel to Petitioner informing her of her right to appeal, that there are "very short timelines and procedures to comply with if you want to [do so]", and advising her not to appeal]), Petitioner was able to hire a new attorney to serve as her appellate counsel.[5] This attorney began filing petitions and motions for post-conviction relief beginning on November 19, 2015, over two and a half years before she filed the instant federal Petition. Nothing during this time prevented Petitioner from filing a state habeas petition raising the ineffective assistance of counsel claim alleged in the instant federal Petition. *See Ramirez v. Yates*, 571 F.3d 993, 998–1001 (9th Cir. 2009) (petitioner not entitled to equitable tolling where he filed other motions in state court during relevant period). This is especially true given that a habeas petition, rather than a direct appeal, is typically the proper vehicle for raising such an ineffective assistance of trial counsel claim in California. *See People v. Mickel*, 2 Cal. 5th 181, 198–99 (2016) ("practical constraints make it more difficult to

_____

[5] In support of her initial petition for writ of habeas corpus seeking constructive notice of appeal, Petitioner provided a declaration explaining that she was in the hospital from August 8, 2015 until October 24, 2015. (Lodgment 1 at 21.) While in the hospital, she received trial counsel's letter informing her of her right to appeal, indicating there was only a short period of time to file an appeal, and that he did not believe there were any issues to appeal. (*Id.* at 22.) The letter clearly advised Petitioner that trial counsel's representation of her was complete. (*Id.* ["This letter formalizes that I have completed your legal objectives, our attorney-client relationship has ended, and your case is thus closed."].) It was only after discussions with a friend while still in the hospital that she decided later to "explore the feasibility of an appeal with another lawyer." (*Id.*) By the time she found her appellate attorney, the time had run to appeal. (*Id.*) Thus, Petitioner has provided no evidence that she was relying on trial counsel to file a federal habeas petition or any state collateral challenges prior to the expiration of the limitations period.

address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding" and "ineffective assistance of counsel claims are rarely successful on direct appeal because the appellate record will often not sufficiently reveal why defense counsel acted or failed to act on any given occasion"); *also United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000) (ineffective assistance of counsel claims are "generally inappropriate on direct appeal" and "should be raised in habeas corpus proceedings, which permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted"). However, Petitioner did not file a state habeas petition addressing her ineffective assistance of counsel claim until September 15, 2016.

Finally, as detailed above, after receiving notice of the denial of her request for a direct appeal from the California Supreme Court on March 23, 2016, Petitioner inexplicably waited nearly six months, until September 15, 2016, to file a state habeas petition addressing the ineffective assistance of trial counsel claim raised in the instant Petition. (*See* Lodgments 5, 6.) Additionally, after Petitioner received her final state court denial of her habeas petition from the California Supreme Court on November 29, 2017 regarding the ineffective assistance of trial counsel claim raised in the instant Petition, she inexplicably waited another nearly seven months before filing the instant federal Petition. (*See* Lodgment 11; ECF No. 1.) She has made no attempt to explain the basis for such delays, and her claim that "*trial counsel took advantage of petitioner's medical condition to her detriment*" simply cannot apply to these two lengthy gaps in Petitioner's filing history. Accordingly, these unexplained gaps cannot support a finding of diligence. The Court finds that Petitioner's trial counsel's action was not the proximate cause of her failure to timely file the instant federal Petition, and that Petitioner did not diligently pursue her rights in a manner necessary to support equitable tolling. *See Holland*, 560 U.S. at 649; *Bryant*, 499 F.3d at 1061; *also Long v. Keeton*, No. 217CV07980FMOKES, 2018 WL 3219646, at *6 (C.D. Cal. Apr. 13, 2018) (petitioner's argument that his attorney abandoned him at the end of his direct appeal did not entitle him to equitable tolling), *report and recommendation adopted,* 2018 WL 3219371 (C.D. Cal. June 29, 2018).

### 4. Miscarriage of Justice Exception

Under the "fundamental miscarriage of justice" exception to the AEDPA limitation period, a habeas petitioner may pursue constitutional claims on the merits "notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). In rare and extraordinary circumstances, a plea of actual innocence can serve as a gateway through which a petitioner may pass to overcome the one-year statute of limitations applicable to federal habeas petitions under AEDPA. *Id.* at 386; *see also Lee v. Lampert*, 653 F.3d 929, 934–37 (9th Cir. 2011) (en banc).

To show actual innocence, the petitioner must meet the threshold requirement set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). This requires a petitioner to "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." 513 U.S. at 324. Such evidence need not be newly discovered, but it must be "newly presented", meaning that it was not before the trial court. *See Griffin v. Johnson*, 350 F.3d 956, 961–63 (9th Cir. 2003); *but see Chestang v. Sisto*, 522 F. App'x 389, 391 (9th Cir. 2013) (newly acquired declaration not sufficiently "new" to support actual innocence because contents were within defendant's knowledge at time of trial and no explanation was given for not introducing it sooner).

Further, a petitioner must "persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329 [noting the miscarriage of justice exception only applies to cases in which new evidence shows "it is more likely than not that no reasonable juror would have convicted the petitioner"]); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is demanding and seldom met). This exacting standard "permits review only in the extraordinary case, but it does not require absolute certainty about the petitioner's guilt or innocence." *Larsen v. Soto*, 742 F.3d 1083, 1095 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 321). Critically, actual innocence means "factual innocence, not mere legal

insufficiency." *Muth v. Fondren*, 676 F.3d 815, 819 (9th Cir. 2012), *as amended* (May 31, 2012); *Bousley v. United States*, 523 U.S. 614, 623 (1998).

A petitioner's new evidence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316. The habeas court considers all evidence, both old and new, incriminating and exculpatory, admissible at trial or not, and based, "[o]n this complete record, the court makes a probabilistic determination about what reasonable, properly instructed jurors would do." *Lee*, 653 F.3d at 938 (internal quotations omitted). "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing" required by *Schlup*. *McQuiggin*, 569 U.S. at 399; *see Schlup*, 513 U.S. at 322 ("[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence].").

Precedent holding that a petitioner has satisfied the *Schlup* standard has "typically involved dramatic new evidence of innocence", such as DNA evidence or a prosecution's chief witness's subsequent open court confession that he was the perpetrator of the murder for which the petitioner had been convicted. *Larsen*, 742 F.3d at 1096. In contrast, access to the *Schlup* gateway has been denied where "a petitioner's evidence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt." *Id.* (citing as examples *Lee*, 653 F.3d at 943–46 and *Sistrunk v. Armenakis*, 292 F.3d 669, 675–77 (9th Cir. 2002) (en banc)).

In her opposition, Petitioner attempts to overcome the procedural bar of untimeliness, addressed below, via the miscarriage of justice exception. *See* Section II.B. However, because the same standards regarding the actual innocence exception can apply to overcome both the AEDPA one-year statute of limitations and procedural default, the Court addresses Petitioner's actual innocence argument in both contexts. In the entirety of her actual innocence argument, Petitioner contends that she:

at all times has argued that she was not impaired by prescription medication at the time of her accident in the parking lot of her employer. Had counsel investigated the proper defense, he could have shown the jury that petitioner functioned well at the noted level of medication, that the facts of the accident were exaggerated by staff members, and police officer's failure to perform the required Drug Recognition Exam prevented her from establishing her innocence.

(ECF No. 5 at 8.)

In support of the ineffective assistance of counsel claim contained in the instant Petition, Petitioner submits the following evidence: (1) a declaration of Russell B. Hubbard, M.D., a psychiatrist and psychopharmacologist (ECF No. 1-2 at 32–38); (2) a declaration of Jack Smith, a retired police officer and drug recognition expert (*id.* at 48– 53); and (3) a declaration of Randolph Beasley, an accident reconstructionist (*id.* at. 54– 60). Petitioner makes no specific argument regarding this evidence in her opposition. However, the Court assumes based on Petitioner's opposition, she believes such evidence could constitute "newly presented" evidence[6] under the actual innocence exception.[7] The Court addresses each declaration in turn.

First, Petitioner claims trial counsel "could have shown the jury that petitioner functioned well at the noted level of medication . . . ." (ECF No. 5 at 8.) The declaration of Dr. Hubbard appears to support this contention. (ECF No. 1-2 at 33–38.) He opines that the jury needed to better understand the concepts of a "therapeutic range" of medication and tolerance. (*Id.* at 35–36; Lodgment 7 at 8.) He states that the therapeutic

_____

[6] Because it does not affect the outcome, the undersigned assumes *arguendo* that these declarations may qualify as "newly presented" evidence of actual innocence for purposes of the *Schlup* gateway. *See Griffin*, 350 F.3d at 963 (*Schlup* gateway claims require only "newly presented" evidence of actual innocence; hospital records that were in petitioner's possession, but not presented at trial court prior to accepting plea bargain qualified as "newly presented" evidence for purposes of the *Schlup* gateway).

[7] Petitioner also includes her own declaration, as well as declarations from her trial counsel and a *Strickland* expert. These are not the types of newly presented evidence that would apply in the miscarriage of justice context. Of note, Petitioner's declaration does not state she was factually innocent of the charges.

range is not an indication of a person's impairment; instead it is the therapeutic effect of the medication, which takes into account the tolerance a person has built up to a particular drug, that is important. (ECF No. 1-2 at 35.) He opines Petitioner's "clonazepam level, which exceeded the published therapeutic range, did not indicate that she was impaired while driving. Instead it showed that while sick, she was doing her best under her doctor's supervision to function under the most normal mental state possible." (*Id.* at 37; Lodgment 7 at 8.) However, during trial Petitioner presented testimony of an expert medicinal chemist board certified in clinical pharmacology. (Lodgment 6 at 262–64 [trial transcripts].) He testified that although the amount of clonazepam in Petitioner's blood was above the therapeutic range, that did not necessarily translate to impairment and could be explained by recent intake or chronic daily intake. He directly addressed the concept of tolerance, that tolerance develops through chronic drug intake and that higher than therapeutic range levels did not necessarily indicate impairment. (*Id.* at 281–87, 296 [stating that video did not show Petitioner was under the influence, but instead that she was "highly anxious"], 298–300 [addressing the concept of tolerance and noting Petitioner has difficulty enunciating her words at all times, giving the appearance of slurred speech]; Lodgment 7 at 9–10.)[8] As such, the jury was in fact presented with information regarding the concepts of tolerance and Petitioner's purported level of functioning at the noted level of medication.

---

[8] Further, Petitioner admitted to the officer following the accident that she is "sensitive" to medication. (Lodgment 6 at 185; Lodgment 7 at 10; *see also* Lodgment 6 at 181 [Petitioner initially telling arresting officer that the only pills or prescription medications she would have present in her blood would be antibiotics].) Additionally, as noted by the San Diego County Superior Court in its order denying Petitioner's state habeas petition, "even if a medical doctor was called as a defense expert and testified that Petitioner had built a tolerance to the clonazepam over time, the jury could have still found, based on other evidence such as eye witness testimony, petitioner's own statements, and the video evidence, that on this particular occasion petitioner was impaired." (Lodgment 7 at 10.) This is underscored by jurors' admissions to trial counsel that they "convicted from the video" of Petitioner. (Lodgment 1 at 31.)

18cv1385 BTM (BGS)

Next, Petitioner claims trial counsel could have shown the jury "that the facts of the accident were exaggerated by staff members . . . ." (ECF No. 5 at 8.) The declaration of Mr. Beasley, accident reconstructionist, appears to support this contention. (ECF No. 1-2 at 55–60.) In his declaration, he opines that the physical evidence does not support the Traffic Collision Report's representation that Petitioner collided with the fence while backing into a tight parking spot and that witness accounts of Petitioner repeatedly ramming into the fence are not consistent with the physical evidence. (*Id.* at 56–59; Lodgment 7 at 11–12.) He did not perceive evidence of "crazy" or "erratic" driving and witness testimony are not supported by physical evidence. (ECF No. 1-2 at 60.) However, this information was also largely presented to the jury at trial. Although in a strategic decision defense counsel did not present an accident reconstructionist at trial (*id.* at 30–31), he did challenge the evidence regarding Petitioner's driving and events surrounding the collision by challenging the Traffic Collision Report, and specifically regarding the direction Petitioner was driving while attempting to park her vehicle. (Lodgment 6 at 138, 141–44, 187.) He also evoked testimony raising doubt as to witness accounts of the incident. (*Id.* at 112–14; 123–24.) Thus, once again, the jury was presented with information supporting the theory that witness accounts of the accident were exaggerated.

Finally, Petitioner contends trial counsel could have shown the jury the "police officer's failure to perform the required Drug Recognition Expert ("DRE") examination prevented her from establishing her innocence." (ECF No. 5 at 8.) The declaration of Mr. Smith, retired police officer and DRE, appears to support this contention. (ECF No. 1-2 at 49–53.) He opines that the officer failed to conduct a DRE exam as required, such an exam is mandatory so that an accurate evaluation and opinion can be obtained, and his failure to conduct such an examination compromises the integrity of his investigation and credibility. (*Id.* at 51–53; Lodgment 7 at 13.) Thus, Mr. Smith opines that the officer's opinion regarding Petitioner's impairment was essentially worthless. (ECF No. 1-2 at 53 ["testing results should not be used to form an opinion of impairment"]; Lodgment 7 at 13.) At trial, the officer admitted he did not complete a DRE examination of Petitioner and

instead conducted three field sobriety tests. (Lodgment 6 at 163–68, 173–180, 197–99.) Petitioner presented an expert witness who criticized the officer for failing to conduct a DRE examination and testified that given Petitioner's statements that she has neuropathy, Behcet's Syndrome, was sick and in pain, and just had outpatient surgery, a medical rule out would have been very important. He opined that the officer's opinions and conclusions were not credible, he criticized the way the field sobriety tests were conducted, and testified the field sobriety tests did not gauge impairment, as Petitioner's fear, anxiety, and pain could mimic impairment. (*Id.* at 370–75, 399–400, 402; Lodgment 7 at 14–15.) Thus, once again, evidence regarding the officer's failure to conduct a DRE exam of Petitioner and its impact on assessing her level of impairment was presented to the jury.

As discussed above, all of the facts Petitioner claims trial counsel could have presented at trial via the use of additional expert testimony that support her "actual innocence", were in fact presented, and ultimately rejected, by the jury. The Court agrees with Respondent: the additional "new" evidence Petitioner presents in support of her ineffective assistance of counsel claim is based on "what she believes the jury would have inferred from allegedly contrary expert testimony" regarding her tolerance to clonazepam, not upon her factual innocence. (*See* ECF No. 3 at 18.) This is the type of cumulative evidence that is insufficient to overcome otherwise convincing proof of guilt. *See Larsen*, 742 F.3d at 1096.

As such, on the record Petitioner has not demonstrated that "it is more likely than not that no reasonable juror would have convicted [her] in light of the new evidence." *See McQuiggin*, 569 U.S. at 199 (quoting *Schlup*, 513 U.S. at 327). She does not fall within the actual innocence exception to overcome AEDPA's one-year statute of limitations.

### 5. Conclusion

Petitioner's ineffective assistance of counsel claim is not timely under 28 U.S.C. § 2244(d)(1). As discussed above, despite Petitioner's assertions, statutory tolling does not render her Petition timely and she is not entitled to equitable tolling. Further, Petitioner

18cv1385 BTM (BGS)

does not fall within the narrow "actual innocence" exception.  Thus, the Petition is barred as untimely under AEDPA's statute of limitations and must be dismissed.

## B. Petitioner's Claim is Procedurally Defaulted

Respondent argues that the sole ineffective assistance of counsel claim presented in the Petition is procedurally barred from federal habeas review based on the California Court of Appeal's invocation of the timeliness rule in its January 24, 2017 order denying the petition.  (ECF No. 3 at 15–18; *see* Lodgment 9 at 2 [citing *In re Reno*, 55 Cal. 4th 428, 459 (2012); *In re Swain*, 34 Cal.2d 300, 302 (1949)].)  He argues the Petition should be dismissed on this ground.

In a single sentence in her opposition, Petitioner argues that "[t]he state court erred by finding the petition was untimely."  (ECF No. 5 at 8 [citing generally *Evans v. Chavis*, 546 U.S. 189 (2006)].)  She claims the delay in filing the habeas petition was "caused by petitioner's multiple attempts to try and obtain [a] standard appeal . . . ."  (*Id.*)  In the alternative, she contends the procedural default can be overcome via the miscarriage of justice exception relying on the same factual innocence arguments addressed above.  (*Id.*)

### 1. Applicable Law

"The procedural default doctrine 'bar[s] federal habeas [review] when a state court decline[s] to address a [petitioner]'s federal claims because the [petitioner] has failed to meet a state procedural requirement.'"  *Calderon v. U.S. Dist. Court*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1, 9 (2012)).  For a claim to be procedurally defaulted for federal habeas corpus purposes, the opinion of the last state court rendering a judgment in the case must clearly and expressly indicate that its judgment rests on a state procedural bar.  *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman*, 501 U.S. at 729–30; *Thomas v. Goldsmith*, 979 F. 2d 746, 749 (9th Cir. 1992).

"For the procedural default rule to apply . . . the application of the state procedural rule must provide an adequate and independent state law basis on which the court can deny relief."  *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003); *see also Calderon*, 96 F.3d

at 1129 ("Under the adequate and independent state grounds doctrine, [courts] will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001); *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000). "A state procedural rule constitutes an 'independent' bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling." *Cooper v. Brown*, 510 F.3d 870, 924 (9th Cir. 2007). "A state procedural rule constitutes an 'adequate' bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)); *see also Calderon*, 96 F.3d at 1129 ("a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default"). A state court's application of its procedural bars is presumed correct unless "the state court's interpretation is clearly untenable and amounts to a subterfuge to avoid federal review . . . ." *Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007) (internal quotation omitted).

The Supreme Court has held that California's timeliness rule for state habeas petitions constitutes an independent and adequate state procedural ground barring subsequent habeas relief in federal court. *See Walker v. Martin*, 562 U.S. 307, 312, 317 (2011) (holding that California's timeliness requirement providing that a prisoner must present claims without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information offered in support of the claim and the legal basis for the claim," is clearly established and consistently applied); *see also Ayala v. Chappell*, 829 F.3d 1081, 1095 (9th Cir. 2016) ("*Walker* holds that California's timeliness rule is an independent and adequate state law ground sufficient to bar federal habeas relief on untimely claims.").

The Ninth Circuit follows a burden-shifting approach to determine whether a state bar is adequate. *See Bennett*, 322 F.3d at 585–86. Because procedural default is an affirmative defense, Respondent must first "adequately ple[a]d the existence of an

independent and adequate state procedural ground." *Id.* at 586. "[T]he burden [then] shifts to the petitioner to come forward with 'specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule.'" *Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004) (quoting *Bennett*, 322 F.3d at 586).

If the state meets this burden, federal review of the claim is foreclosed unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "To establish cause . . . the [petitioner] must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila v. Davis*, ___ U.S. ___, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *see McCleskey v. Zant*, 499 U.S. 467, 490, 493–94 (1991) (focusing on "petitioner's acts to determine whether he has a legitimate excuse for failing to rise a claim at the appropriate time."). To show prejudice, a petitioner must demonstrate "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis original). Petitioner bears the burden of proving both cause and prejudice. *Murray*, 477 U.S. at 494.

## 2. Analysis

The California Supreme Court denied Petitioner's state court habeas petition addressing her ineffective assistance of counsel claim without comment or citation. (Lodgment 11.) Where, as here, the California Supreme Court denies a petitioner's claim without comment, the state high court's "silent" denial is considered to rest on the last reasoned decision on the claim, in this case, the grounds articulated by the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–06 (1991) ("where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the

merits"); *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1193–94 (2018); *see, e.g.*, *Bonner v. Carey*, 425 F.3d 1145, 1148 & n.13 (9th Cir. 2005), *as amended* 439 F.3d 993 (9th Cir. 2006) (looking through California Supreme Court's summary denial of a state habeas petition to the lower state court's reasoned decision denying the petition on state procedural grounds). Accordingly, the Court considers whether the procedural ground relied on by the California Court of Appeal to deny the petition was an adequate and independent state procedural rule. (*See* Lodgment 9.)

Respondent has satisfied his burden with respect to the timeliness bar. *See Walker*, 562 U.S. at 312–21; *Bennett*, 322 F.3d at 581. The California Court of Appeal expressly held Petitioner's petition was untimely,[9] as her challenge on her conviction was "launched initially in the superior court more than a year after she was convicted without any explanation for the delay." (Lodgment 9 at 2.) Additionally, the California Court of Appeal cited *In re Reno*, 55 Cal. 4th at 459 ("criminal defendant mounting a collateral attack on a final judgment of conviction must do so in a timely manner") and *In re Swain*, 34 Cal. 2d at 302 ("it is the practice of this court to require that one who belatedly presents a collateral attack such as this explain the delay in raising the question") invoking California's timeliness rule. (Lodgment 9 at 2.) The timeliness of a habeas petition in California is not governed by fixed statutory deadlines, but instead "California directs petitioners to file claims as promptly as the circumstances allow." *Walker*, 562 U.S. at 310 (internal quotation marks omitted). Claims that are "substantially delayed without justification may be denied as untimely." *Id.*

_____

[9] That the Court of Appeal alternatively rejected Petitioner's claim on its merit does not alter the Court's procedural bar analysis. *See Harris*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *Carey*, 536 U.S. at 225–26 (state court's alternative rulings regarding petition's timeliness and "on the merits" did not make petition timely or properly filed under state law).

18cv1385 BTM (BGS)

Here, the California Court of Appeal found that Petitioner's filing of a habeas petition over a year after her conviction amounted to "substantial delay." (*See* Lodgment 9 at 2.) Further, the Supreme Court has held that California's timeliness rule for state habeas petitions constitutes an independent and adequate state procedural ground barring subsequent habeas relief in federal court. *Walker*, 562 U.S. at 316–22; *see also Ayala*, 829 F.3d at 1095 ("*Walker* holds that California's timeliness rule is an independent and adequate state law ground sufficient to bar federal habeas relief on untimely claims."); *Bennett*, 322 F.3d at 581 ("We conclude that because the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground."). Thus, Respondent has adequately established California's timeliness rule is "of an independent and adequate state procedural ground." *See Bennett*, 322 F.3d at 586 ("Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner.").

Accordingly, the burden shifts to Petitioner to challenge the independence or adequacy of the timeliness bar. *Id*. Petitioner has not asserted any factual allegations that demonstrate the inadequacy of the state procedure or provided any citation to authority demonstrating inconsistent application of the rule. *See Carter*, 385 F.3d at 1198. Although she argues that her delay in filing her habeas petition addressing her ineffective assistance of trial counsel claim was "caused by petitioner's multiple attempts to try and obtain [a] standard appeal . . . .", this is not the type of "objective [external] factor [that] impeded counsel's efforts to comply with the State's procedural rule." (ECF No. 5 at 8); *Davila*, 137 S. Ct. at 2065. As discussed above in the context of equitable tolling, nothing prevented Petitioner from filing a state habeas petition raising her ineffective assistance of counsel claim in a timely manner. *See* Section II.A.3. Thus, Petitioner fails to demonstrate cause for the default, let alone address actual prejudice as a result of the alleged violation of federal law. She has not satisfied her burden to show "cause" and "prejudice" to overcome the procedural default.

Finally, for the same reasons discussed above in the context of the AEDPA statute of limitations, Petitioner is not able to overcome the procedural bar of untimeliness via the fundamental miscarriage of justice exception. *See* Section II.A.4. Accordingly, her ineffective assistance of counsel claim is procedurally barred from federal habeas review and the Petition must be dismissed.

## III. CONCLUSION AND ORDER

For the reasons discussed above, the Court **GRANTS** Respondent's Motion to Dismiss (ECF No. 3) and **DISMISSES** the Petition for a Writ of Habeas Corpus (ECF No. 1) as untimely under 28 U.S.C. § 2244(d)(1) and procedurally barred.

The Court **GRANTS** a Certificate of Appealability. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: May 29, 2019

Hon. Barry Ted Moskowitz
United States District Judge